SHANNON, Judge.
The appellant was the plaintiff below in a suit, brought by him against the appellee upon a contract for services rendered, in which there was a verdict of the jury for defendant. The plaintiff has assigned six points which he alleges the trial court erroneously decided against him. We have read the briefs as well as the record and have come to the conclusion that there are only two points in the case that need be treated in this opinion.
The defendant, a widow, had inherited from her husband numerous parcels of real estate in Palm Beach County which had been managed for quite a number of years by Ted Brown as agent for her husband and, subsequent to his death, as her agent. The defendant was primarily a musician and knew nothing about business as such. The plaintiff met the defendant at a social gathering at defendant’s house in the year 1949, and in the course of conversation the defendant told him that she owned property in West Palm Beach. At the time they first met the defendant was quite content and had no suspicions of her agent. There is conflict in the testimony, but the gist *789 ■of what happened between the parties in the weeks that followed is that defend■ant became very suspicious of her agent because of statements made to her by plaintiff. She was persuaded by him to believe that her agent had made profits unknown to her in handling her business and that in a suit against him she should recover a large judgment. Thereafter, she entered into a written contract with the plaintiff on July 23, 1949, which provided, among other things, as follows:
“3. The party of the first part agrees to pay unto the party of the second part for his services, a net five per cent of the properties or money recoverable over above her undisputed half interest as set forth in the Inventory of Ted Brown, as of Jine 1st, 1949 together with his letter of June 9th, and a net ten per cent of all other properties or money recoverable by reason of such proposed proceedings.
***** *
“It is further mutually understood and agreed by and between the respective parties hereto that should the matters involved in the proposed proceedings herein above mentioned be compromised or settled without the expressed agreement and consent of the party of the second part that he shall be paid for the services rendered to the date of such compromise.”
The defendant, after entering into this contract, brought suit against her agent Ted Brown, and Ted Brown in turn brought suit against her. The two cases were consolidated for trial and resulted in an order by the trial court entered on the 4th day of April 1952, which stated in part:
“Concerning the accounting of the agent, the Court has heard the testimony with reference to all the charges of the plaintiff, dealing particularly with items of property alleged to have been sold during the lifetime of the husband of the plaintiff, and for which there was no accounting, and other transactions briefly described as those involving Northwood Developers, Inc., Overholzer, Lobnitz, Bowen, Dean, Nowling, Criswell, Cook as well as the instance involving the present real estate offices of the agent. A great mass of documentary evidence was introduced. The Court concludes that while the real estate agent did not handle these business transactions with the legal precision of a lawyer or a trained accountant, he did act in good faith and did account for all of the sales of the property. The few items to adjust the difference can be incorporated in the Final Decree. There has been no breach of trust.
“The Court therefore determines that the equities of this cause are with the agent, insofar as the accounting is concerned.
******
“ * * * The widow — who here very fairly and frankly states she is not a business woman, but a musician —was advised by others, who probably had slight knowledge about the details of the business transactions of her former husband and the agent. She was unable to appreciate the significance of the various real estate transactions and accountings made by the agent. The result was that her suspicions were unjustly aroused. Litigation was provoked. As far as the accounting was concerned, it might well have been avoided had the parties carefully gone over the details of these transactions before the suit was brought. Now the property is involved in litigation to the loss of all.
“It is my conclusion that the agent has fully and faithfully discharged his trust, but that the principal had the right to revoke the agency, upon some proper accounting to the agent, as outlined in this decree.
“Costs generally in this cause will be taxed against the widow, but the exact *790 allocation will be determined at the time of the entry of the final'decree.
“If the parties can amicably agree as to adjustments for taxes, the amounts that will be due the agent, together with interest thereon from the time the amount was paid or expense incurred, the Court will entertain such a stipulation in lieu of further testimony. If the parties cannot agree, the Court will, upon application of either party, hear such testimony as may be offered, and enter a Final Decree.”
After this order was entered the defendant met with Ted Brown — not to be confused with the plaintiff in the present suit —and their respective attorneys, and the defendant paid Ted Brown the amount of $10,000 in property.
After these two suits had been disposed of the plaintiff brought this action against the defendant under their contract, alleging and testifying that he had spent considerable time in interviewing various witnesses, checking the properties at the courthouse, etc., from the date of the contract until approximately May 16, 1952, the date the suit was settled, and that for these services the defendant owed him $28,240. The defendant denied the material allegations of the complaint and stated as her affirmative defense that the contract was champertous. The jury thus had three main issues of fact before it, namely; (1) whether the contract was champertous, (2) whether defendant had settled her alleged claim against Ted Brown by compromise and settlement, or (3) whether the services alleged to have been performed by the plaintiff were actually performed by him. After the charge by the court the jury returned a verdict for the defendant.
Plaintiff alleges the trial court erred in allowing the defense of champerty to go to the jury, maintaining this was a questtion of law to be decided by the court. Under the facts and circumstances of this case it would have been error had the trial court not submitted this issue to the jury. 14 C.J.S. Champerty and Maintenance §§ 49, 60. Obviously the plaintiff was suing upon the contract itself, as the statute of limitations would have precluded him from suing under a common count for services performed. The defendant had testified at great length in order to make out the elements of champerty, although her testimony conflicted with that of the plaintiff. Assuming everything that defendant said was true, there was sufficient evidence not only for the case to go to the jury but also for the jury’s verdict to be sustained on the basis that it found the contract was champertous.
By his points four and five plaintiff takes exception to the trial court’s giving a general charge on champerty and failing to give an instruction offered by him. We have read the entire charge of the trial court to the jury and are unable to agree with plaintiff. Having decided that the trial court correctly gave the jury the question as to whether or not the contract was champertous, its instructions to the jury on this question were correct and free from error.
The refusal of the trial court to give plaintiff’s requested instruction Number two was not error because of a general instruction which the trial court did give. Hence, the jury could have found that the defendant had compromised and settled her suit with Ted Brown if they had believed the evidence adduced. As we have said, from the case as a whole it appears to us that the jury had three questions of fact and were correctly instructed on all three questions. Their verdict shows that they selected at least one of them.
The other points urged by the plaintiff do not constitute reversible error, if indeed they are error at all.
Affirmed.
KANNER, C. J., and ALLEN, J., concur.